IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JASON GREGORY MITCHELL | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. WDQ-14-3152 |
| COLIN OTTEY, et al. | * | |
| Defendants | * | |

*\*\**

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss (ECF 7), Plaintiff's Response in Opposition (ECF 10), and Defendants' Reply (ECF 11).  No hearing is necessary to resolve the matters asserted in the Motion to Dismiss. *See* Local Rule 105.6 (D. Md. 2014).   For the reasons that follow, Defendants' motion shall be denied.

### Allegations in the Complaint

In his self-represented Complaint Plaintiff, a prisoner confined at North Branch Correctional Institution (NBCI), alleges he was denied adequate medical care over a period of three months, causing him to suffer unnecessary pain. ECF 1 at pp. 4 – 6.  He states that on May 22, 2014, he experienced a sharp pain in his left arm.  The following morning he put in a sick call slip so he could be seen for symptoms of pain and swelling in the left arm as well as numbness to the left side of his body.  *Id.* at p. 4.   On May 24, 2014, Plaintiff complained to Correctional Officer Markel about his condition and Markel spoke to "Nurse Chrissy" about Plaintiff's condition.  *Id.*  The nurse saw Plaintiff but simply checked his blood pressure and put him on a list to be seen by a medical provider.  *Id.*

Plaintiff continued to complain to Markel from May 25 to May 27, 2014, because the pain of his condition was making his ability to walk to "chow" prohibitive. On May 27, 2014, he was seen again by Chrissy and she again checked his blood pressure and told him he was on a list to be seen by a doctor. Two days later he was seen by a nurse practitioner, Defendant Janette Clark, who also checked his blood pressure and gave Plaintiff a "basic examination." *Id.* When Clark attempted to raise Plaintiff's left arm he claims he screamed in pain. Clark told Plaintiff he had scoliosis of the lumbar spine with a pinched nerve and prescribed "steroid shots for five days." *Id.*

Plaintiff received "steroid pills" instead of the shots discussed with Clark on June 4, 2014. He states at this time the pain in his back and arm were still making his ability to walk difficult and painful, impacting on his ability to receive meals. On June 6, 2014, Plaintiff spoke with Officer Waters about his condition who then talked to Sergeant Brewer about getting a doctor appointment for Plaintiff. Brewer also told Plaintiff he would ask medical staff to put Plaintiff on "feed-in" status due to the pain he was experiencing with walking. On June 9, 2014, Plaintiff was advised by Markel to file an administrative remedy regarding the failure to provide proper medical treatment. ECF 1 at p. 4.

On June 9 and 11, 2014, Plaintiff put in sick call slips to be seen for his complaints of pain with walking. He further states he attempted to walk to the kitchen on June 11, 2014, but was told by Officer Moheny to return to his cell as it was taking him too long to walk. Moheny said he would get a bag lunch for Plaintiff. At this time Plaintiff spoke with Lt. McAlpine about his medical condition and McAlpine called the medical office to find out what was going on. Two hours later Plaintiff was taken by wheelchair to the "main Medical Department" where he was seen by Clark and another "unknown medical personnel." ECF 1 at p. 5.

2

Clark asked Plaintiff if the steroids had helped and Plaintiff informed her they had not. At this time Clark asked Plaintiff a series of questions and when she attempted to move Plaintiff's right arm he screamed in pain.  McAlpine asked Clark if Plaintiff could be placed on "feed-in" status at least until the x-ray results came back.  Plaintiff states that Clark agreed to put him on that status, but after he was returned to his cell he was informed by Markel that "medical took me off the feed-in status."  ECF 1 at p. 5.  Plaintiff was later informed by Sergeant Carr that medical staff had determined feed-in status would not be provided to him as they thought it was better for him to walk to the kitchen to eat. *Id.*

On June 12, 2014, Plaintiff filed an administrative remedy procedure complaint ("ARP") to the warden about the failure to address his medical condition.  Plaintiff was also taken to Western Correctional Institution ("WCI") hospital for x-rays of his arm and the "top" of his spine. *Id.*  That evening Plaintiff declined the opportunity to go to dinner and told the tier officer he was not able to walk without pain.  The officer remarked that other officers on a prior shift reported Plaintiff had walked "pretty good" at lunchtime, thus Plaintiff did not receive an evening meal. *Id.*

On June 13, 2014, Plaintiff again complained it was too painful to walk to lunch and asked if he could get a bag lunch.  Officer Miller told Plaintiff he could not get a bag lunch because medical staff wanted Plaintiff to walk to eat his meals.  The following day Plaintiff saw Nurse Chrissy and asked questions about his medical condition, but she provided no answers and simply told Plaintiff he needed to walk. *Id.*

On June 15 through June 18, 2014, Plaintiff was asked by correctional staff if he was going to walk over to eat lunch and dinner, but he declined because of the pain involved in

walking. Plaintiff alleges he was not able to eat on a consistent bases for over a month at that time. *Id.*

On June 19, 2014, Plaintiff was seen by Clark, who took his blood pressure and explained that the x-rays did not show anything wrong. Clark also told Plaintiff he had a mild case of scoliosis and that she would order blood work to be done. Lastly, Clark stated that she would "have Doctor Ottey look at [Plaintiff] for a second opinion." ECF 1 at p. 6.

On June 24, 2014, Plaintiff saw Nurse Martin in response to the ARP he had filed. Martin told Plaintiff she could not give him feed-in status and "to keep doing the exercises." *Id.* Plaintiff states he told Martin he could not do any exercises. Martin then told Plaintiff the reason he is numb is that he "laid on it too long and it went numb." *Id.* The following day Plaintiff signed paperwork authorizing the blood work ordered.

On August 12, 2014, Plaintiff was informed that his lab reports were not available to medical staff in either paper or electronic form. On August 14, 2014, Plaintiff was seen by Dr. Ava Joubert who informed him that the blood work "was good" and that his symptoms of numbness are not caused by scoliosis; rather, Dr. Joubert told Plaintiff she thought he had a stroke. *Id.* Plaintiff concludes that he has repeatedly asked for medical attention because the pain with walking prevents him from taking meals regularly, but "the medical personnel just will not do anything to help with my medical condition." *Id.*

## Standard of Review

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) this Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120

F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677 - 78 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, citing *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (once a

claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

## Analysis

Defendants first assert that the Complaint must be dismissed for failure to comply with Maryland's Health Claims Arbitration Act. ECF 7 at Memorandum; *See* Md. Code Ann., Cts & Jud. Proc., §3-2A-02. The statute requires, as a condition precedent to filing suit for "damages of more than the limit of the concurrent jurisdiction of the district court," filing of a claim with the Director of the Healthcare Alternative Dispute Resolution Office. *Id.*, *see also* Md. Cts & Jud. Proc., Code Ann. §3-2A-04(a). Maryland's state district courts have exclusive original jurisdiction over "an action in contract or tort, if the debt or damages claimed to not exceed $30,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees." Md. Cts & Jud. Proc., Code Ann. §4-401. The instant Complaint seeks unspecified damages for pain and injury, but also injunctive relief compelling medical care. ECF 1 at p. 3. Even if Plaintiff intended to allege a claim of medical malpractice pursuant to this Court's supplemental jurisdiction,[1] it is unclear from the face of the Complaint that Plaintiff was required to comply with the conditions precedent noted by Defendants as the amount in damages cannot be discerned from the Complaint. Moreover, the Complaint was filed on pre-printed forms for a civil rights action filed pursuant to 42 U.S.C. §1983 and was construed as such by this Court. The asserted failure to comply with the Health Claims Arbitration Act is not an adequate basis for dismissal of the Complaint.

Defendants further assert that Plaintiff has failed to properly plead an Eighth Amendment claim and that the Complaint fails to state any personal wrongdoing by Defendant Dr. Collin Ottey. ECF 7 at Memorandum p. 2 and pp. 4 – 10. In order to state an Eighth Amendment

---

[1] *See* 28 U.S.C. §1367(c).

constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851.  Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention.  *Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Taking the allegations in the instant Complaint as true and providing the Complaint liberal construction as this Court is required to do with self-represented pleadings, a colorable Eighth Amendment claim as been stated.  Plaintiff has alleged that he was made to suffer pain of unknown cause due to the evident refusal of medical staff to investigate and treat the source of his pain.  Plaintiff has also alleged that the pain was significant enough to gain the attention of

7

several correctional officers who attempted to intervene on his behalf.  To the extent that some care was provided, Plaintiff's claim is that the care was so minimal that it amounted to no care at all.   Forcing Plaintiff to endure pain needlessly, if proven through objective evidence, is sufficient to state an Eighth Amendment claim.  While it is true that a misdiagnosis may not form the basis for an Eighth Amendment claim, Defendants may not simply avoid liability through willful ignorance.  Particularly where, as here, there is an allegation that a doctor suspected Plaintiff's symptoms were the result of a stroke.  ECF 1 at p. 6.  There are enough facts alleged that, if proven true, could support an Eighth Amendment claim.

With respect to the claim against Dr. Ottey, Defendants assert there are no allegations raised against him in the Complaint, entitling him to dismissal from the case.  ECF 7.  In his Response in Opposition Plaintiff states that his claim against Dr. Ottey is premised on the allegation in the Complaint that Clark consulted with Ottey for a second opinion.  ECF 10 at pp. 1 – 2, *see also* ECF 1 at p. 6.   Plaintiff's theory is that Ottey's failure to act and his apparent agreement with Clark's diagnosis is evidence he was deliberately indifferent to his serious medical need.

Defendants' Motion to Dismiss shall be denied.  The case shall be governed by the schedule set forth in a separate Order which follows.

_5/4/15_
Date

_____
William D. Quarles, Jr.
United States District Judge

8